O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL HUNTER, | ) | NO. CV 11-01995-MAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff filed a Complaint on March 8, 2011, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). On April 8, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on November 28, 2011,[1] in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the

---

[1]     The parties divided the Joint Stipulation into two parts, one setting forth plaintiff's portion of the Joint Stipulation (hereinafter "P. Joint Stip.") and the other setting forth the Commissioner's portion (hereinafter "C. Joint Stip.").

payment of benefits; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On April 1, 2008, plaintiff filed an application for a period of disability and DIB. (Administrative Record ("A.R.") 92.)  Plaintiff, who was born on March 11, 1954 (A.R. 185),[2] claims to have been disabled since April 24, 2003 (A.R. 16, 92), due to "spine injury" and "cognitive limits," as well as difficulties lifting more than five pounds and moving his neck (A.R. 106, 114, 278).

After the Commissioner denied plaintiff's claim initially and upon reconsideration, plaintiff requested a hearing.  (A.R. 92.)  On June 2, 2009, plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Judge Jeffrey A. Hatfield (the "ALJ").  (Id.)  Vocational expert Randi Langford-Hetrick also testified.  (Id.)  On November 19, 2009, the ALJ issued a partially favorable decision, finding plaintiff disabled from March 11, 2009, through the date of his decision.  (A.R. 96.)

In a written brief dated January 4, 2010, plaintiff appealed the ALJ's November 19, 2009 decision to the Appeals Council on the ground that the ALJ erred in not fully considering the period before March 11,

---

[2]    On the date of the ALJ's November 2, 2010 decision, plaintiff was 56 years old, which is defined as an individual of advanced age. (A.R. 22; citing 20 C.F.R. § 404.1563.)

1  2009.  (A.R. 321-28.)  Pursuant to a March 10, 2010 order, the Appeals
2  Council vacated the ALJ's decision and remanded the case to the ALJ so
3  that he could:    (1) "[o]btain additional evidence regarding
4  [plaintiff's] work activity after the alleged onset date and identify
5  periods of [substantial gainful activity]"; (2) "[o]btain additional
6  evidence concerning [plaintiff's] severe chronic neck pain and status-
7  post two surgeries of the cervical spine"; (3) and "[g]ive further
8  consideration to [plaintiff's] maximum [RFC] and provide appropriate
9  rationale with specific references to evidence of record in support of
10 the assessed limitations."  (A.R. 104-05.)

12    On October 13, 2010, plaintiff, who was again represented by an
13 attorney, appeared and testified at a second administrative hearing
14 before the ALJ.  (A.R. 16.)  Vocational expert Randi Langford-Hetrick
15 also appeared and testified.  (Id.)  On November 2, 2010, the ALJ denied
16 plaintiff's claim (A.R. 16-23), and the Appeals Council subsequently
17 denied plaintiff's request for review of the ALJ's decision (A.R. 1-5).
18 That decision is now at issue in this action.

20                    **SUMMARY OF ADMINISTRATIVE DECISION**

22    In his November 2, 2010 decision, the ALJ found that plaintiff met
23 the insured status requirements of the Social Security Act through
24 December 31, 2009.  (A.R. 18.)  The ALJ also found that plaintiff has
25 engaged in substantial gainful activity "during the period from his
26 alleged onset date of April 24, 2003 through his date last insured of
27 December 31, 2009."  (Id.)  As indicated in the ALJ's earlier, November
28 19, 2009 decision, plaintiff "worked [during 2006] for 3-4 months but

3

1    not at the substantial gainful activity level." (A.R. 94.) In the

2    November 2, 2010 decision now at issue, the ALJ notes that plaintiff

3    "returned to work in 2009 and worked full time as an over-the-road truck

4    driver."[3] (A.R. 19.)

6    The ALJ also determined that plaintiff has the severe impairments

7    of "chronic neck pain," "status post two surgeries of the cervical

8    spine," and "cognitive disorder." (A.R. 18.) The ALJ concluded that

9    plaintiff had past relevant work ("PRW") as an electrician. (A.R. 21.)

10   The ALJ also noted that the vocational expert found that plaintiff had

11   prior work experience as a long-haul truck driver and sales associate.

12   (Id.)

14   The ALJ found that plaintiff does not have an impairment or

15   combination of impairments that meets or medically equals one of the

16   listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20

17   C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (A.R. 18.) After reviewing

18   the record, the ALJ determined that, through the date last insured,

19   plaintiff had the residual functional capacity ("RFC") to perform:

21       medium work as defined in 20 C.F.R. § 404.1567(c) except no

22       climbing of ladders/ropes, occasional reaching overhead

23       bilaterally and with avoidance of working in [a] noisy

24       environment. [Plaintiff] has mild restriction of activities

25       of daily living, mild difficulties in maintaining social

26       functioning and mild difficulties in maintaining

28   [3]    The record reflects that plaintiff had earnings of $5,841.15 in 2006, and $20,938.97 in 2009. (A.R. 19, 260.)

4

1  concentration, persistence or pace with no episodes of
2  decompensation. Accordingly, [plaintiff] can perform simple,
3  repetitive tasks, occasional low stress work with occasional
4  interaction with co-workers/general public and in a structured
5  environment.

7  (A.R. 20.)

9  The ALJ further concluded that, through the date last insured,
10  plaintiff was unable to perform any past relevant work. (A.R. 21.)
11  However, based on his RFC assessment and after having considered
12  plaintiff's age, education,[4] work experience, and the testimony of the
13  vocational expert, the ALJ found that jobs exist in the national economy
14  that plaintiff could perform, including "laundry laborer,"
15  "houseworker," and "hand packager." (A.R. 22.) Accordingly, the ALJ
16  concluded that plaintiff "was not under a disability, as defined in the
17  Social Security Act, at any time from April 24, 2003, the alleged onset
18  date, through December 31, 2009, the date last insured . . . ." (A.R.
19  23.)

21  **STANDARD OF REVIEW**

23  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's
24  decision to determine whether it is free from legal error and supported
25  by substantial evidence in the record as a whole. <u>Orn v. Astrue</u>, 495

27      [4]    The ALJ found that plaintiff "has a high school education,
28  plus two years of college and is able to communicate in English." (A.R.
    22.)

5

F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Hum. Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins</u>

6

1 | v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v.

2 | Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d

3 | at 679.

5 | **DISCUSSION**

7 | Plaintiff claims that the ALJ did not consider properly:  (1) the

8 | opinions of plaintiff's physicians; and (2) plaintiff's subjective pain

9 | testimony.   (P. Joint Stip. at 3-13.)

11 | **I.   The ALJ Did Not Consider The Opinions Of Plaintiff's**

12 | **    Physicians Properly**.

14 | It is the responsibility of the ALJ to analyze evidence and

15 | resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d

16 | 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions

17 | considered in assessing a social security claim, "[g]enerally, a

18 | treating physician's opinion carries more weight than an examining

19 | physician's, and an examining physician's opinion carries more weight

20 | than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195,

21 | 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d).

23 | The opinions of treating physicians are entitled to the greatest

24 | weight, because the treating physician is hired to cure and has a better

25 | opportunity to observe the claimant. Magallanes, 881 F.2d at 751.  When

26 | a treating physician's opinion is not contradicted by another physician,

27 | it may be rejected only for "clear and convincing" reasons.  Lester v.

28 | Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another

7

1 doctor, a treating physician's opinion may only be rejected if the ALJ
2 provides "specific and legitimate" reasons supported by substantial
3 evidence in the record. *Id.*

5     In determining plaintiff's RFC, the ALJ stated that he
6 "acknowledged" the conclusions of consultative examiner Dr. Sarah L.
7 Maze, who performed a neurological evaluation of plaintiff and opined
8 that plaintiff could perform a full range of heavy work, but the ALJ
9 nevertheless gave plaintiff the "benefit of the doubt" and found that
10 plaintiff "can perform a limited range of medium exertion [work]."
11 (A.R. 19.) The ALJ also stated that he gave significant weight to the
12 opinions of the medical consultants from the California Disability
13 Services, who concluded that plaintiff did not have a severe mental
14 impairment, "because their conclusions are consistent with the objective
15 findings and the evidence of record." (A.R. 20.)

17     The ALJ failed, however, to consider properly the opinions of
18 several of the treating, examining, and non-examining physicians. For
19 example, the ALJ does not appear to have considered, weighed, or given
20 appropriate reasons for rejecting the opinion of plaintiff's treating
21 neurologist, James F. Haas, M.D. In a January 18, 2005 Permanent and
22 Stationary Report by Primary Treating Physician, Dr. Haas diagnosed
23 plaintiff with post-traumatic head syndrome, cervical strain syndrome,
24 deconditioning complaints of knee and back pains, and lumbosacral
25 sprain. (A.R. 409.) Based on his review of the record, his examination
26 of plaintiff, and plaintiff's subjective complaints, Dr. Haas opined

8

1  that plaintiff should be limited to light work.[5]  (A.R. 411.)  In his
2  November 2, 2010 decision, the ALJ fails to mention, let alone give a
3  specific and legitimate reason for rejecting, the opinion of Dr. Haas.
4  This constitutes error.[6]

6      Similarly, it does not appear that the ALJ considered the opinions
7  of plaintiff's treating physician Gilbert P. Hager, M.D., who diagnosed
8  plaintiff with a history of concussions, postconcussive syndrome, mild
9  cognitive impairment, memory loss, light sensitivity, headaches,
10 insomnia, sleep disturbance, malaise and fatigue, anxiety/irritability,
11 depression, and cervical pain.  (A.R. 1739.)  Dr. Hager noted, *inter*
12 *alia*, that plaintiff "continues to exhibit significant cognitive
13 impairments," has poor short-term memory, and has deficits in his long-
14 term memory.  (A.R. 1739.)  Nothing in the Administrative Record

17 ___

17 [5]    In the ALJ's November 19, 2009 decision, he apparently agreed
18 with the opinions of Dr. Haas and other physicians (discussed *infra*) who
    opined that plaintiff was limited to light work.  Indeed, the ALJ stated
    in that opinion: "After careful consideration of the entire record, the
19 [ALJ] finds that beginning on March 11, 2009, [plaintiff had] the
    residual functional capacity to perform light work . . . ."  (A.R. 95.)

20 [6]    The Commissioner now contends that the ALJ committed no
    reversible error because:  (1) he "implicitly rejected this opinion by
21 limiting [p]laintiff to a range of medium work"; and (2) "Dr. Haas based
    his opinion on [p]laintiff's discredited subjective complaints, [and]
22 the ALJ was entitled to reject it."  (C. Joint Stip. at 4.)  The ALJ's
    first reason is unavailing, because the ALJ must give specific and
23 legitimate reasons for rejecting the opinion of a treating physician
    when it is contradicted.  The ALJ's second reason is also unavailing,
24 because as detailed *infra*, the ALJ did not discredit plaintiff's
    subjective complaints properly, and thus, the ALJ was not entitled to
25 reject Dr. Haas's opinion on that ground.  Moreover, the ALJ never
    proffered this as a reason for rejecting Dr. Haas's opinion.  *See, e.g.,*
26 Orn, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in
    the disability determination and may not affirm the ALJ on a ground upon
27 which he did not rely"); Connett, 340 F.3d at 874 (finding that "[i]t
    was error for the district court to affirm the ALJ's . . . decision
28 based on evidence that the ALJ did not discuss").

9

1  establishes, or even suggests, that the ALJ considered the opinion of

2  Dr. Hager, as required.[7]

4  Additionally, there is no evidence that the ALJ considered the

5  opinion of workers' compensation physician Kourosh Shamlou, M.D., an

6  orthopaedic surgeon.   In his April 2004 evaluation, Dr. Smalou:

7  diagnosed plaintiff with post concussion headaches, degenerative disc

8  disease with neck pain, and multiple rib fracture; opined that plaintiff

9  would not be able to return to his pre-injury job duties; and continued

10 plaintiff on temporary total disability.  (A.R. 397-400.)   In his May

11 and June 2004 evaluations, Dr. Shamlou noted that plaintiff had the

12 following work restrictions:   "no repetitive turning of the neck";

13 "[n]ot able to keep head in one position greater than 15 min[utes]"; no

14 driving; and "no heavy lifting, carrying, pushing or pulling."[8]  (A.R.

15 401-03.)  Dr. Shamlou also noted that if plaintiff's employer could not

16 accommodate  plaintiff's  restrictions,  plaintiff  would  continue  on

17 temporary  total  disability  status.    (Id.)    In  his  August  2004

18 evaluation, Dr. Shamlou opined that plaintiff was limited to "heavy

19 lifting, no repetitive turning of the neck [or] keeping the head in one

22  [7]   The Commissioner now contends that the opinion of Dr. Hager is
   irrelevant,  because  it  post-dated  the  time  period  under  the  ALJ's
23 consideration -- to wit, from the alleged onset date, April 24, 2003,
   through the date last insured, December 31, 2009 -- and thus, the ALJ
24 was entitled to ignore it.  (C. Joint Stip. at 5.)   The Commissioner's
   argument  is  erroneous,  because  the  Ninth  Circuit  has  held  that
25 "[m]edical evaluations made after the expiration of a claimant's insured
   status are relevant to an evaluation of the pre-expiration condition."
26 Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988), reaffirmed in
   Lester, 81 F.3d at 832.

27  [8]   In his May 2004 evaluation, Dr. Shamlou also found that
   plaintiff was restricted to "no prolonged forward or upward gazing" and
28 "no computer work."  (A.R. 401.)

10

position more than 15 minutes at a time[,] and no driving. (A.R. 406.) In addition, Dr. Shamlou noted that plaintiff should avoid working at heights, driving, and working with machinery. (A.R. 406.) Dr. Shamlou opined that plaintiff's disability status was permanent and stationary. (*Id.*) Once again, there is no evidence that the ALJ properly considered, weighed, or gave appropriate reasons for rejecting the opinion of Dr. Shamlou. This constitutes error.[9]

---

[9] The Commissioner now contends that the ALJ did not commit error in failing to consider the opinion of Dr. Shamlou, because the opinions of workers' compensation physicians "are not binding on the Social Security Administration." (C. Joint Stip. at 2.) However, while medical source opinions on issues reserved to the Commissioner, such as the determination of a claimant's ultimate disability, are not determinative or entitled to special weight based on the source of the medical opinion, it is not true that the Commissioner is free to disregard this information. Social Security Ruling ("SSR") 96-8p, 1996 SSR LEXIS 5, at *21 n.8. Rather, the ALJ is instructed to consider such opinions in adjudicating a disability claim. As such, the Commissioner's first reason is unavailing.

The Commissioner also contends that the ALJ did not commit error in considering the opinion of Dr. Shamlou, because "Dr. Shamlou opined that [p]laintiff could return to work if his employer could accommodate certain restrictions," and "[i]n the social security context, if [p]laintiff is able to do his job, he [i]s not disabled." (C. Joint Stip. at 2-3.) However, the Commissioner's contention is unpersuasive, because it is entirely unclear whether plaintiff's employer could accommodate plaintiff's restrictions, and thus, the Court cannot find the ALJ's failure to consider the opinion of Dr. Shamlou to be harmless.

Lastly the Commissioner contends that the ALJ's failure to address the opinion of Dr. Shamlou was harmless, because his opinion "would not have changed the ALJ's ultimate nondisability finding." (C. Joint Stip. at 3.) Specifically, the Commissioner asserts that Dr. Shamlou's opinion "did not indicate an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." (*Id.*; emphasis omitted.) However, as noted *supra*, in his last evaluation of plaintiff, Dr. Shamlou found that plaintiff had various work restrictions and placed plaintiff on permanent and stationary disability status. Permanent and stationary status is defined as "the point when the employee has reached maximal medical improvement his or her condition is well stabilized *and unlikely to change substantially in the next year with or without medical treatment*." 8 C.C.R. §

1    Lastly, it does not appear that the ALJ considered the opinion of

2   State Agency reviewing physician Catherine A. Eskander, M.D., who

3   opined, *inter alia*, that plaintiff should be restricted to light work

4   (A.R. 1102-06.)[10]   This constitutes error.[11]

5

6    Accordingly, because the ALJ did not consider, weigh, and/or give

7

8   _____

9   9811(I)(emphasis added); *see also* 8 C.C.R. § 9785(a)(8).  As such, the
    Court cannot find the ALJ's failure to consider the opinion of Dr.
10  Shamlou to be harmless.

11   [10]   The Commissioner now contends that, because Dr. Eskander
    "opined that the medical evidence of record supported an inability to do
12  heavy activities but also supported a [RFC] for light work," the ALJ
    "was entitled to resolve this ambiguity by finding that [p]laintiff
13  could perform a range of medium work."   (C. Joint Stip. at 5.)
    Critically, however, there is no evidence that the ALJ considered, let
14  alone resolved, the apparent ambiguity in Dr. Eskander's opinion.  As
    such, the Commissioner's reasoning is unpersuasive.

15   [11]   Plaintiff claims that the ALJ failed to consider other medical
    opinions of record.  For example, plaintiff claims that the ALJ failed
16  to consider the opinion of plaintiff's treating physician Jeffrey
    Sudeith, M.D., who, in 2003, opined on several occasions that plaintiff
17  was limited to lifting five pounds. (*See, e.g.*, A.R. 338, 340-42, 344-
    45, 359, 362, 364, 367-68, 370-71, 374-77.)  In response, the
18  Commissioner contends that the ALJ did not commit any error in
    considering this opinion, because plaintiff engaged in substantial
19  gainful activity in 2003.  As the Commissioner properly notes, plaintiff
    had significant earnings in 2003.  (A.R. 260.)  However, while the ALJ
20  did find that plaintiff engaged in substantial gainful activity during
    the period from the alleged onset date of April 24, 2003, through his
21  date last insured of December 31, 2009, his November 2, 2010 decision
    only references plaintiff's earnings in 2009.  (A.R. 18-19.)  However,
22  as this case is being remanded for the reasons set forth *infra*, the ALJ
    should revisit his consideration of Dr. Sudeith's opinion on remand.
23
     Plaintiff also contends that the ALJ failed to consider the
24  opinions of the State Agency reviewing physicians D. Gross M.D. (A.R.
    1124-27), and L. Schwartz, M.D. (A.R. 1143-45), both of whom plaintiff
25  alleges opined that he should be limited to light work.  (P. Joint Stip.
    at 5.)  As the Commissioner properly contends, it does not appear that
26  Dr. Gross opined that plaintiff should be limited to light work.  It
    does appear that Dr. Schwartz affirmed Dr. Eskander's finding that
27  plaintiff should be limited to light work.  In view of the fact that
    this case is being remanded, the ALJ should also revisit his
28  consideration of these medical opinions.

1  appropriate reasons for rejecting the various medical opinions of
2  record, as required, the ALJ committed reversible error.

3

4  **II.   The ALJ Failed To Give Clear And Convincing Reasons For**
5  **Finding Plaintiff's Testimony To Be Not Credible**.

6

7  Once a disability claimant produces objective medical evidence of
8  an underlying impairment that is reasonably likely to be the source of
9  claimant's subjective symptom(s), all subjective testimony as to the
10  severity of the symptoms must be considered. Moisa v. Barnhart, 367
11  F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345
12  (9th Cir. 1991); see also 20 C.F.R. § 404.1529(a) (explaining how pain
13  and other symptoms are evaluated). "[U]nless an ALJ makes a finding of
14  malingering based on affirmative evidence thereof, he or she may only
15  find an applicant not credible by making specific findings as to
16  credibility and stating clear and convincing reasons for each."
17  Robbins, 466 F.3d at 883. The factors to be considered in weighing a
18  claimant's credibility include:  (1) the claimant's reputation for
19  truthfulness; (2) inconsistencies either in the claimant's testimony or
20  between the claimant's testimony and her conduct; (3) the claimant's
21  daily activities; (4) the claimant's work record; and (5) testimony from
22  physicians and third parties concerning the nature, severity, and effect
23  of the symptoms of which the claimant complains.  See Thomas v.
24  Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §
25  404.1529(c).

26

27  An ALJ may not rely on a plaintiff's daily activities to support an
28  adverse credibility determination when those activities do not affect

the claimant's ability to perform appropriate work activities on an ongoing and daily basis. Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990). As the Ninth Circuit noted in Lester v. Chater, the ALJ must evaluate claimant's "'ability to work on a *sustained* basis.'" 81 F.3d at 833 (emphasis in original; citation omitted). A claimant need not be "utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)(internal citations omitted).

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 21.) Further, the ALJ did not expressly find plaintiff to be a malingerer.[12] Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be clear and convincing.

The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC] assessment." (A.R. 21) Specifically, the ALJ stated that: (1) "[p]laintiff's pain testimony . . . is not consistent with the objective findings or the record as a whole"; (2) "there is very little evidence of treatment"; (3) there are inconsistencies in plaintiff's

---

[12] As discussed in detail *infra*, in one of the psychological evaluation tests administered to plaintiff, it was noted that plaintiff's score reflected a high probability of malingering. While the ALJ noted this result along with the other results of the psychological testing, neither the ALJ nor the physician administering the exam specifically found plaintiff to be a malingerer.

14

testimony regarding his ability to work at "the substantial gainful activity level"; (4) there are "discrepancies in [plaintiff's] performance on the Trails test"; (5) [plaintiff]'s daily activities are . . . inconsistent with his allegations"; and (6) "[plaintiff] does not appear to be too motivated to work and appears to be benefit seeking." (A.R. 19-21)

The ALJ's first ground for rejecting plaintiff's testimony is unavailing. In his decision, the ALJ rejects plaintiff's pain testimony, because "it is not consistent with the objective findings or the record as a whole." (A.R. 19.) The ALJ notes, for example, that "[t]here is no evidence of a large, unintended weight loss due to a loss of appetite from pain. There is also no corroboration of severe sleep deprivation from pain, or concentration, attention or cognitive deficits from pain." (A.R. 20.) However, the failure of the medical record to corroborate a claimant's subjective symptom testimony fully is not, by itself, a legally sufficient basis for rejecting such testimony. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001); Bunnell, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simply because a claimant fails to produce evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings"). Thus, the ALJ's finding that the objective evidence does not support the extent of plaintiff's pain testimony cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony. See Varney v. Secretary, 846 F.2d 581, 584 (9th Cir. 1988); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Burch, 400 F.3d at 681.

1    The ALJ's second reason for discrediting plaintiff -- *to wit*, that
2  "there is very little evidence of treatment" -- is also unavailing. In
3  support of his reasoning, the ALJ notes that, notwithstanding the fact
4  that plaintiff underwent cervical fusion twice, "it is reasonable to
5  assume that he would have sought out treatment modalities which
6  alleviate severe and unremitting pain."     (A.R. 19.)   The ALJ
7  specifically notes that plaintiff: "is not currently participating in
8  physical therapy"; "does not use a TENS unit and he has not been
9  referred to a pain clinic"; and "[t]here is also no evidence that he
10 used home remedies, such as a heating pad or hot baths for pain relief."
11 (*Id.*)   Accordingly, the ALJ concluded that "it is reasonable to assume
12 that [plaintiff's] pain is not as severe or as limiting as he alleged."
13 (*Id.*)

15    As an initial matter, the sheer length of plaintiff's
16 administrative record, which comprises 1,764 pages and is filled with
17 treatment records for plaintiff, calls into question the legitimacy of
18 the ALJ's contention.  In fact, as plaintiff properly notes, the ALJ
19 contradicts himself in the next sentence by stating that the "records
20 from the Department of Veterans Affairs confirms [sic] [plaintiff]'s
21 treatment for multiple complaints."   (A.R. 19.)   Further, although
22 plaintiff may not have undertaken the treatment modalities noted by the
23 ALJ, plaintiff has tried various other modalities to treat his pain.
24 For example, beyond having undergone two surgical procedures on his
25 cervical spine, plaintiff underwent a series of epidural steroid
26 infusions to ameliorate his pain.   (*See, e.g.,* A.R. 940-45, 949-52.)
27 While plaintiff reported good pain relief with the first injection,
28 plaintiff reported minimal, if any, pain relief with subsequent

16

1  injections.  (A.R. 911.)  In addition, the record contains various pain
2  management reports noting that plaintiff has taken significant
3  medications to relieve his pain, including, *inter alia,* "Naprosyn as an
4  anti-inflammatory"; "Flexeril for muscle spasm"; "Fiorinal for chronic
5  migraines"; "Imitrex for chronic migraines"; "Neurotin for neuropathic
6  pain"; and/or Vicodin as prescribed by plaintiff's surgeon for pain.
7  (*See, e.g.,* A.R. 1171, 1176, 1180, 1183-84, 1186-87, 1189-90, 1192-93,
8  1194-95.)  Plaintiff also has undergone multiple C3 third occipital
9  nerve block procedures to relieve his pain.  While plaintiff received
10 some temporary relief from these procedures, he still experiences pain
11 in his neck with radiation to his occipital region.  (*See, e.g.,* A.R.
12 1286.)  Indeed, after failing to experience pain relief from the nerve
13 block procedure, it was noted that plaintiff has "exhausted all
14 potential interventional pain procedures" and "[a]t this stage
15 [plaintiff] may benefit [from a] neurosurgery consult to explore the
16 surgical options."  (*Id.*)  Accordingly, in view of the evidence of
17 record, the ALJ's second reason does not constitute a clear and
18 convincing reason for discrediting plaintiff.
19
20     The ALJ also discredits plaintiff because "at the first hearing, he
21 denied working at the substantial gainful activity level, but later at
22 the second hearing, he admitted that he had worked all of 2009."  (A.R.
23 21.)  The ALJ misstates the record. As noted by plaintiff, at the first
24 hearing, plaintiff testified that he had started working again January
25 2009.  (A.R. 64.)  In fact, plaintiff's counsel specifically asked that
26 the ALJ consider plaintiff's 2009 work activity as a "trial work period"
27 or, in the alternative, consider a closed period of benefits.  (A.R.
28 62.)  In other words, contrary to the ALJ's representation, plaintiff

17

1    did not deny working in 2009 at the substantial gainful activity level
2    at the first hearing, and thus, the ALJ's reasoning cannot constitute a
3    clear and convincing reason for discrediting plaintiff.

5         The ALJ also found plaintiff to be not credible, because there were
6    "discrepancies   in   [plaintiff's]   performance   on   the   Trails   test"
7    administered by clinical psychologist Charlene K. Krieg, Ph.D.   (A.R.
8    21.)   Specifically, the ALJ noted that plaintiff scored better on the
9    more   difficult   Trail   B   items   than   the   Trail   A   items.   (*Id.*)   In
10   addition, the ALJ noted that plaintiff had an attitude of disinterest
11   during  the  examination  and  scored  in  the  highly  probable  range  for
12   malingering on the Test of Malingered Memory ("TOMM") exam.   (A.R. 20.)
13   Although not entirely clear, to the extent the ALJ discredits plaintiff
14   because  these  discrepancies  and/or  inconsistencies  are  suggestive  of
15   malingering,  the  ALJ's  reasoning  is  unpersuasive.    As  noted  by
16   plaintiff,  Dr.  Krieg  noted  on  *multiple*  occasions  throughout  his
17   psychological  evaluation  that  plaintiff  "appeared  to  be  putting  forth
18   his  best  effort"  --  a  finding  that  is  at  odds  with  a  finding  of
19   malingering.   Moreover,  beyond  citing  the  results  of  the  TOMM  test,
20   neither  Dr.  Krieg  nor  the  ALJ  found  plaintiff  to  be  a  malingerer.   As
21   such, the ALJ's reasoning is unavailing.

23       The ALJ's next ground for finding plaintiff to be not credible  --
24   *to wit*,  that  plaintiff's  daily  activities  are  inconsistent  with  his
25   allegations  --  is  unpersuasive.   In  his  decision,  the  ALJ  noted  that
26   plaintiff  "took  care  of  his  personal  needs,  did  household  chores,  drove
27   his  car  and  spen[t]  time  taking  his  children  to  school  and  to  their
28   extracurricular  activities."   (A.R. 21.)   The ALJ also noted that "[t]he

1   record showed that in May 2010, [plaintiff] was getting ready to go on
2   an outing with his wife." (*Id.*)  The ALJ does not articulate, however,
3   *how* plaintiff's daily activities are at odds with his alleged pain and
4   mental and physical limitations.  Further, the ALJ fails to explain how
5   plaintiff's basic activities, light household chores, and outing with
6   his wife translate into the ability to perform full-time work.[13]  *See*
7   Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (noting that the
8   "mere fact that a plaintiff has carried on certain daily activities,
9   such as grocery shopping, driving a car, or limited walking for
10  exercise, does not in any way detract from her credibility as to her
11  overall disability").  Therefore, the ALJ failed to articulate a clear
12  and convincing reason, as required, for finding plaintiff to be not
13  credible.

15      The  ALJ's  last  ground  for  discrediting  plaintiff  is  also
16  unpersuasive.  The ALJ asserts that plaintiff "does not appear to be too
17  motivated to work and appears to be benefit-seeking."  (A.R. 21.)   In
18  support of this ground for discrediting plaintiff's pain testimony, the
19  ALJ notes that plaintiff "requested a medical support letter from his
20  doctor because he was at risk of losing his home." (*Id.*)  It is unclear
21  how this request actually undermines plaintiff's credibility.  Further,
22  contrary to the ALJ's statement, plaintiff appears motivated to work.
23  As noted *supra*, plaintiff attempted to work both in 2006 and in 2009.
24  Moreover,  even  the  ALJ  noted  in  his  decision  that  plaintiff  "had

---

26      [13]    Moreover, as plaintiff properly notes, plaintiff's planned
27  outing with his wife may have been "per the orders of his occupational
    therapist at the VA as part of [p]laintiff's] therapy program to improve
28  his activities of daily living."  (P. Joint Stip. at 11; *citing* A.R.
    1421.)

19

1  completed a course to renew his real estate license and was interested
2  in purchasing/fixing/flipping homes." (*Id.*)  As such, the ALJ's reason
3  fails to constitute a clear and convincing reason for discrediting
4  plaintiff.

6   Accordingly, for the aforementioned reasons, the ALJ failed to give
7  clear and convincing reasons for discrediting plaintiff's testimony.[14]

9  **III. Remand Is Required.**

11  The decision whether to remand for further proceedings or order an
12  immediate award of benefits is within the district court's discretion.
13  *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no
14  useful purpose would be served by further administrative proceedings, or
15  where the record has been fully developed, it is appropriate to exercise
16  this discretion to direct an immediate award of benefits.  *Id.* at 1179
17  ("[T]he decision of whether to remand for further proceedings turns upon
18  the likely utility of such proceedings.").  However, where there are
19  outstanding issues that must be resolved before a determination of
20  disability can be made, and it is not clear from the record that the ALJ
21  would be required to find the claimant disabled if all the evidence were
22  properly evaluated, remand is appropriate.  *Id.* at 1179-81.

26  ───────────────
27  [14]   While the Commissioner now offers other reasons to explain the
ALJ's credibility determination, the Court cannot entertain these post
hoc rationalizations. *See, e.g.,* <u>Connett</u>, 340 F.3d at 874 (finding that
28  "[i]t was error for the district court to affirm the ALJ's credibility
decision based on evidence that the ALJ did not discuss").

1    Remand is the appropriate remedy to allow the ALJ the opportunity
2    to remedy the above-mentioned deficiencies and errors.[15]   *See, e.g.,*
3    Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for
4    further proceedings is appropriate if enhancement of the record would be
5    useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)
6    (remand appropriate to remedy defects in the record).   On remand, the
7    ALJ must correct the above-mentioned deficiencies and errors.   After
8    doing so, the ALJ may need to reassess plaintiff's RFC, in which case
9    additional testimony from a vocational expert likely will be needed to
10   determine what work, if any, plaintiff can perform.   The ALJ should also
11   carefully reconsider whether plaintiff:   (1) became disabled on March
12   11, 2009, as the ALJ concluded in his November 19, 2009 decision; and
13   (2) had a closed period or periods of disability at any time from April
14   24, 2003, his alleged onset date, through March 10, 2009, or later.
15   ///
16   ///
17   ///
18   ///
19

20   [15]   Plaintiff has requested that this Court "accept [p]laintiff's
     testimony as true and accept the opinions of all the physicians who
21   treated and/or examined [p]laintiff, as well as reviewed [p]laintiff's
     medical records [as true]" and remand for the payment of benefits.
22   (P. Joint. Stip. at 14-15.)   In the Ninth Circuit, evidence should be
     credited and an immediate award of benefits directed when:   "(1) the ALJ
23   has failed to provide legally sufficient reasons for rejecting such
     evidence, (2) there are no outstanding issues that must be resolved
24   before a determination of disability can be made, and (3) it is clear
     from the record that the ALJ would be required to find the claimant
25   disabled were such evidence credited."   Connett, 340 F.3d at 876.   In
     this case, however, because there are differing medical opinions
26   regarding plaintiff's limitations and restrictions, it is not entirely
     clear from the record for what period the ALJ would be required to find
27   plaintiff disabled were such evidence credited.   For example, in his
     last evaluation, Dr. Shamlou restricted plaintiff to heavy lifting;
28   whereas, other physicians, whose opinions plaintiff has also requested
     that the Court credit, limited plaintiff to lifting ten pounds or less.

1
2

**CONCLUSION**

3     Accordingly, for the reasons stated above, IT IS ORDERED that the
4 decision of the Commissioner is REVERSED, and this case is REMANDED for
5 further proceedings consistent with this Memorandum Opinion and Order.
6

7     IT IS FURTHER ORDERED that the Clerk of the Court shall serve
8 copies of this Memorandum Opinion and Order and the Judgment on counsel
9 for plaintiff and for defendant.
10

11     **LET JUDGMENT BE ENTERED ACCORDINGLY.**
12

13 DATED:     June 14, 2012

14

_Margaret A. Nagle_

15                                    MARGARET A. NAGLE
                                      UNITED STATES MAGISTRATE JUDGE
16
17
18
19
20
21
22
23
24
25
26
27
28

22